**DOUD, Plaintiff-Appellee, v. CINCINNATI, (CITY) Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7017.   Decided December 29, 1948.

Graydon, Head & Ritchey, Cincinnati, William A. McKenzie, for plaintiff-appellee.

Henry M. Bruestle, Maurice W. Jacobs, Robert J. White, Cincinnati, for defendant-appellant.

274

## OPINION

By ROSS, J.:

This is an appeal upon questions of law from a judgment entered in the Court of Common Pleas of Hamilton County, after and in conformity with separate findings of fact and conclusions of law made by the court, in a trial to the court without a jury..

In her petition, the plaintiff states that she is the owner of certain real estate in the. City of Cincinnati, that a house is located thereon, that the defendant, the City of Cincinnati maintains a sewer under such house, that the defendant failed to keep such sewer in repair, that it became broken "at a point seven feet west of the west wall of plaintiff's house, thereby causing the house to settle and the foundation walls to crack, whereby plaintiff sustained damage in the amount of Eight Hundred and Fifty ($850.00) Dollars."

The answer of the City is a general denial.

Judgment was rendered for $850.00 on the 25th day of May, 1948.

From the evidence it appears that the plaintiff's property is located on Linwood Road, a street of the City of Cincinnati, extending in a general northeastwardly and southwestwardly direction, that LeBlond Avenue extends southeastwardly from Arnold Avenue, and joins Beverly Hills Road, which continues the direction of LeBlond Avenue until Beverly Hills Road intercepts Linwood Road.

From maps introduced in evidence it appears that a natural watercourse is created by the fall of the area now located on either side of LeBlond Avenue and Beverly Hills Road, which extends eastwardly from its intersection with LeBlond Avenue, and that such natural watercourse extends from such intersection in a generally southerly direction toward Linwood Road, but that it does not reach it, and follows a line somewhat parallel to Linwood Road until it reaches a point in Linwood Road near Sheffield Avenue, the next street west of Beverly Hills Road. It further appears that such natural water course was sewered by private individuals from a point some considerable distance north of the intersection of Beverly Hills Road and LeBlond Avenue, across what is now such intersection and to a point some little distance south of it. Such watercourse from this latter point ran through an open ditch until it reached a point to the north of plaintiff's property where again private parties had installed a 24″ sewer following the water course, as just described. It was over this

lower section of the watercourse enclosed in the 24″ sewer that plaintiff erected her house.

The result of the situation which existed prior to the creation of a subdivision about LeBlond Avenue and Beverly Hills Road and the placing of such streets therein, is that a 15″ inch sewer extended out of what is now such subdivision for some distance to the south of it, emptied into an open ditch, which extended some considerable distance to the south, the flow from such ditch being then picked up by the 24″ sewer running under the plaintiff's property, and discharged into another sewer.

It further appears that after dedication of LeBlond Avenue and Beverly Hills Road, the City installed in such streets sanitary sewers which converged into a manhole at the intersection of LeBlond Avenue and Beverly Hills Road, that from said manhole, the City constructed a sewer extending down the extension of Beverly Hills Road eastwardly to Linwood Road and that the City removed the old 15″ sewer south of the intersection of Beverly Hills Road and LeBlond Avenue and placed a new 18″ sewer in its place, extending it down through the old open ditch until it joined the 24″ sewer located to the northwest of Linwood Road, and extending down toward Sheffield Avenue, through plaintiff's property. The result of this changed situation was that sewage, as well as surface drainage, from the area in the neighborhood of LeBlond Avenue and Beverly Hills Road, north of the manhole in the intersection of these thoroughfares was partially diverted through the sewer created and installed by the City of Cincinnati, and by its connection with the old 24″ private sewer through that latter sewer to another portion of the City sewer system.

Thus the City has used the private sewer over which the plaintiff's house is located as a link between two public sewers. As far as the record shows, however, no attempt was made to acquire a definite easement for the use of this sewer, as was done in the case of the northeasterly end from the manhole in the intersection of LeBlond Avenue and Beverly Hills Road, southwardly to the 24″ sewer.

Outside of this evidence, the only other evidence connecting the City with the use of such 24″ private sewer was the fact that the plaintiff applied for and was given a permit to connect the sewage of her house with this 24″ sewer, described in the permit as a "public sewer" and that she paid for such permit, and that while the City required permits for tapping either private or public sewers, no fee was charged for tapping

private sewers. That the City, upon complaint about the settling, sent a crew out to inspect the 24″ sewer, and that this private sewer is shown upon the plats of the City as a part of the sewer system. In this connection, however, it was shown that both private and public sewers are shown on such plats.

It is also in evidence that the plaintiff's husband at the time the permit was obtained was a city plumbing inspector.

It appears that the first notice the City had of any defect in the 24″ sewer was when the plaintiff, as just stated, informed the City authorities that the walls of her house had sunk. Representatives of the City made an inspection by digging a hole to the west of the plaintiff's house and looking through the sewer. They were enabled to see 22′ east under plaintiff's house and 26′ west of the plaintiff's house. It was found that the sewer was in a badly dilapidated condition, was cracked and falling apart. A part of the sewer in the inspection excavation was removed in order that this inspection could be made. After the inspection was made, the portion of the sewer so removed was replaced and the excavation filled. The husband of plaintiff testified the City's employees repaired the sewer, but he did not testify in what manner and to what extent.

No further action was taken by the City and this action was filed.

A motion was made by the City for judgment at the close of all the evidence, and a motion for a new trial duly filed after judgment. Apparently, it is from the overruling of this latter motion entered June 28, 1948 that an appeal is taken, although the entry from which appeal is taken is designated in the notice of appeal as a final order entered "18th June, 1948." There is no entry upon this date.

The trial Court in its findings of fact found that by such acts of the City "thereby adopting and incorporating said sewer into the sewer system of said City, without objection and with the acquiescence of the property owners over whose property said sewer flowed. That due to the gradual deterioration of said sewers, said house settled and resulted in damage thereto in the amount of $850.00. That inspection of said sewer by the City of Cincinnati at reasonable intervals would have disclosed a deteriorating condition of said sewer and prevented the resulting damage" and that the City failed to exercise reasonable care in the inspection of said sewer, and that such failure was the proximate cause of damage to plaintiff's property.

There is nothing in the record to show when the deterioration in the sewer took place, or whether the sewer was defec-

tive at the time plaintiff put her house over it, except that the sinking of the walls of the house occurred eleven years after the City had caused the sewage from the subdivision to be carried into such sewer, and twenty-one years after plaintiff had placed her house over such private sewer. The house of plaintiff was built in 1922, the new sewer was installed by the City in 1932. The house settled in the fall of 1943. There is no evidence to show how the "deterioration of the sewer" caused the settling of the walls of the plaintiff's house. It will be remembered the evidence is that the inspectors looked through the sewer. The evidence is the sewer was not clogged, but that the "pipes were cracked and broken."

The only evidence upon the question of added load is that "No additional quantity of water went through" the sewers by reason of the connection with the City sewers. It is in evidence that any additional sewage load by reason of the development of the subdivision was provided for at the manhole by the sewer extending from the manhole in the intersection of LeBlond Avenue and Beverly Hills Road down Beverly Hills Road to Linwood Road.

It is admitted that the new 18″ sewer constructed and installed by the City from the manhole in LeBlond Avenue and Beverly Hills Road down to the point where it joins the 24″ private sewer is accepted as a public sewer of the City.

There is no evidence that the change in the character of material carried by the sewer caused its deterioration, or when such deterioration occurred, or in fact what was the cause of the deterioration. As far as the record shows, such deterioration may have occurred (though later effective to cause a sinking of the wall) before the plaintiff built her house over it, or because she built her house upon it. There is also no evidence or stipulation that there was any flow of water or material from the sewer into the property of plaintiff.

In **City of Norwood v. Sheen, Exr., 126 Oh St, 482,** and **Steinle v. City of Cincinnati, 142 Oh St, 550,** such flow of water causing damage is considered a temporary appropriation of property for which the owner is entitled to compensation. Such situation does not exist here. The question here presented is:—Had the City accepted responsibility for the 24″ sewer simply because of its use by the City as a link in its sewage system? The City never at any time exercised any jursidiction over the 24″ sewer. Its sole connection with it was to discharge sewage collected by the City by other sewers into the 24″ sewer, and inspecting it at the request of the plaintiff. There is a vast difference in holding the City

responsible for damage caused by disposal of its sewage upon or through the property of a complainant, and holding it responsible for the condition of a sewer which is still serviceable and is disposing of such sewage and solely because it becomes dilapidated.

If the evidence in this case showed that such **sewage** so disposed of by the City in the 24″ sewer caused the injury to plaintiff's premises, an entirely different situation would be presented than that here considered. There is not a scintilla of evidence in this case that the **sewage passing through** the 24″ sewer caused this plaintiff any damage.

The fact that the City erroneously and improperly charged a fee for tapping into the 24″ sewer did not constitute an acceptance of obligation for its condition.

The facts in the case of **City of Portsmouth v. Mitchell Mfg. Co., 113 Oh St, 250**, relied upon by plaintiff, are so radically different from those here involved that that case needs no comment, nor does any statement of law therein aid the plaintiff's position.

It is apparent that a case could be shown involving the location and operation of the sewers here considered which would place responsibility upon the City for damage caused by the discharge of sewage into the private sewer. As far as this record shows the 24″ sewer is still a private sewer. Conditions may arise placing liability upon the City for such use of this **private sewer**. Those conditions are not present in the instant case.

The record fails to show any actual notice to the City of the defective condition of the sewer prior to the complaint of the plaintiff. The City now, however, has had such notice and it may well be supposed that this condition may ripen into a situation which would place liability upon the City for damage caused by the escape of sewage from the private sewer. With such situation, this Court is not now concerned.

The trial court found that the damage to plaintiff's house was due to the deterioration of the sewer. There is no finding that such deterioration or damage to the house was due to the flow of sewage through the 24″ sewer, or beyond it in or upon plaintiff's property.

It may be further noted that plaintiff in her petition does not even claim that the damage to her premises was due to any obstruction in the sewer or to any flow of sewage in and upon her premises from it, or through it. Her claim is predicated entirely upon the claim of deterioration of the sewer, and the failure of the City to repair it.

There being an entire failure of proof showing that the flow of sewage through the 24″ private sewer, or that such sewage caused damage to plaintiff's property by escaping therefrom, judgment must be here rendered for the defendant.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.